Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| DAVID LUCIANO PEÑA, SUC. EDIE PEÑA BARBOSA, SUCN. DANIEL LUCIANO ARROYO T/C/C/ DANIEL LUCIANO<br><br>RECURRIDOS<br><br><br>V.<br><br><br>ELIZABETH LUCIANO GONZALEZ, CYNTHIA LUCIANO GONZÁLEZ, DANIEL LUCIANO GONZÁLEZ Y OTROS<br><br>PETICIONARIOS | TA2026CE00523 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.: MZ2024CV00712<br><br>Sobre:<br><br>División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**


**SENTENCIA**


En San Juan, Puerto Rico, a 23 de junio de 2026.

Comparecen ante nos, Elizabeth Luciano González; Cynthia Luciano González t/c/c como Cynthia González Luciano; y Myrna Rosa González Irizarry, (en adelante, en conjunto, "las peticionarias"). Solicitan nuestra intervención para que dejemos sin efecto la *"Resolución Interlocutoria y Orden,"* emitida el 13 de marzo de 2026 y notificada el 16 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante esta, el foro primario autorizó que se enajenara el bien inmueble objeto de litigio a través del otorgamiento de una escritura de compraventa. Cónsono con lo anterior, ordenó que el Alguacil General compareciera a suscribir la referida escritura en representación de los herederos de Daniel Luciano Arroyo y de Edie Peña Barbosa. Además, determinó, que una vez pagados los sellos del otorgamiento de la Escritura, los honorarios del notario y la deuda del CRIM, se debe consignar en el Tribunal la cantidad

sobrante del precio de venta. A su vez, autorizó la remoción de los bienes muebles que se encuentran dentro de la propiedad a enajenar y ordenó que se informe el lugar en donde estos serán almacenados. Todo ello, dentro de un pleito civil instado por el señor David Luciano Peña (en lo sucesivo, "el recurrido").

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* presentado y *confirmamos* la determinación recurrida.

**I.**

El 2 de mayo de 2024, el recurrido presentó una *"Demanda"* sobre división y liquidación de comunidad hereditaria en contra de las peticionarias y los coherederos: Daniel Luciano González y Luis Daniel, David y Danylee de apellido Luciano Rivera. Expuso, que sus padres, el señor Daniel Luciano Arroyo y la señora Edie Peña Barbosa[1] contrajeron nupcias en el año 1946, bajo el régimen económico de la Sociedad Legal de Bienes Gananciales. Agregó, que ambos progenitores fallecieron: su padre en el año 2005 y su madre en el año 2018. Asimismo, aseveró que su hermano, el señor Daniel Luciano Peña, falleció en el año 2017 y dejó como herederos a sus seis (6) hijos y a su cónyuge supérstite, quienes en conjunto forman la parte aquí demandada.

Indicó, que su padre y hermano murieron intestados mientras que su madre otorgó testamento en el cual él fue nombrado albacea testamentario. De otra parte, arguyó que sus progenitores mantenían la titularidad de un bien inmueble de naturaleza ganancial. Ante ello, peticionó al foro primario que emitiera una serie de órdenes dirigidas a 1) autorizar la venta del referido bien por la cantidad de $250,000.00 para el pago de aranceles, honorarios, deudas de contribución y mantenimiento; 2) requerirle al Alguacil General que suscriba la escritura de compraventa en nombre de los demandados; y 3) que se consigne en el Tribunal el sobrante monetario de la compraventa para que posteriormente pueda ser distribuido entre los herederos.

---

[1] Surge de la *"Demanda"* que la referida causante también era conocida por los siguientes nombres: Elis Peña Luciano, Elis Providencia Peña Barbosa, Elis Peña Barbosa, Elis P. Luciano y Elis Peña.

En respuesta, el 17 de junio de 2024, las copeticionarias Myrna Rosa González y Cynthia Luciano presentaron de manera conjunta *"Contestación a Demanda."* En esencia, aceptaron las alegaciones relativas al deceso de las personas mencionadas en dicha *"Demanda."* De igual modo, admitieron que el recurrido fue nombrado albacea del caudal relicto de la causante Edie Peña. No obstante, esgrimieron que el término de su albaceazgo ya había vencido. A su vez, negaron la legitimidad de la petición de compraventa del inmueble en disputa, bajo el fundamento de que el recurrido no contó con el parecer del resto de los herederos.[2] Asimismo, el 22 de julio de 2024, la copeticionaria Elizabeth Luciano presentó su *"Contestación a Demanda."* En síntesis, se unió a las respuestas esbozadas por ambas copeticionarias.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 18 de marzo de 2025, el foro primario notificó la *"Minuta"* de la vista celebrada el 11 de marzo del mismo año. De esta *"Minuta,"* surge una *"Resolución y Orden,"* mediante la cual, entre otras cosas, el tribunal de instancia determinó lo siguiente: a) que la propiedad inmueble tiene un valor de tasación no controvertido por la cantidad de $200,000.00; b) autorizó al recurrido a presentar un contrato de opción de compra a favor de terceros cuyo precio de compraventa es de $250,000.00; y c) ordenó que de dicho precio de compraventa se consignara la cantidad inicial de $40,000.00.

Así las cosas, el 2 de abril de 2025, las peticionarias presentaron una *"Reconsideración."* En suma, señalaron lo siguiente:

> a. Erró el tribunal al decretar la venta de la propiedad inmueble que pertenece a los herederos por la suma de $250,000.00 a una tercera parte, sin antes cerciorarse del poder económico que podía tener el heredero interesado en la compra, para adquirirla por esa misma cantidad, el cual goza de un derecho de adquisición preferente conforme a la ley, constituyendo estas determinaciones un claro abuso de discreción del Tribunal.
>
> b. Erró el tribunal al disponer que la venta de la propiedad inmueble se va a llevar a cabo una vez se obtenga el correspondiente Relevo del Departamento de Hacienda, sin tomarse determinación alguna sobre qué va a pasar con los bienes muebles que se encuentran dentro del inmueble y que forman parte del inventario de bienes que conforman ambas herencias.

---

[2] Cabe señalar, que los días 12 y 30 de julio de 2024, el foro primario notificó la anotación de rebeldía de los siguientes demandados: David Luciano Rivera; Danylee Luciano Rivera; y Daniel Luciano González.

c. Erró el tribunal al continuar con los procedimientos a pesar de que, la reclamación no es justiciable por falta de madurez, ya que la partición solicitada depende de varios trámites anteriores, que a esta fecha no se han realizado, tales como, la liquidación de la Sociedad de Bienes Gananciales conformada por los causantes, por lo que el tribunal carece de autoridad para, en este punto, intervenir el pleito del caso de epígrafe.

Posteriormente, el 24 de abril de 2025, el foro recurrido notificó *"Resolución en Reconsideración."*[3] El referido foro determinó lo siguiente: a) que el contrato de opción de compra debe contener una advertencia del derecho de retracto que les asiste a las peticionarias y al resto de los coherederos; b) que una vez presentado correctamente el contrato de opción de compra, entonces pasará a aceptarse la consignación de $40,000.00; y c) que luego de que se obtengan los Relevos del Departamento de Hacienda y se lleve a cabo la compraventa, se procederá a saldar la deuda del Centro de Recaudaciones de Ingresos Municipales (CRIM), que grava el inmueble objeto de disputa.

Así las cosas, el 29 de enero de 2026, el recurrido presentó "*Escrito Urgente Solicitando se Emita Orden."* Expuso, que las personas que figuran como optantes en el contrato de opción de compra están listas desde el pasado mes de julio de 2025 para perfeccionar el contrato de compraventa, puesto que ya se había cumplido con la condición suspensiva de obtener relevos enmendados del Departamento de Hacienda. Agregó, que el término de treinta (30) días para ejercer la opción de compra había quedado en suspenso en virtud de la paralización de los procedimientos notificada por el Tribunal de Apelaciones en el caso TA2025CE00126. No obstante, según arguyó, ya reanudados los procesos judiciales no existe impedimento alguno

---

[3] Es preciso señalar, que el 9 de mayo de 2025, las peticionarias presentaron una segunda petición de reconsideración intitulada: *"Reconsideración a Resolución en Reconsideración."* En atención de ello, el 10 de junio de 2025, el foro primario notificó una *"Resolución"* mediante la cual declaró No *Ha Lugar* el petitorio de reconsideración. En desacuerdo, las peticionarias comparecieron ante el Tribunal de Apelaciones a través de un recurso de *certiorari.* En esa ocasión, un Panel Hermano, en el caso TA2025CE00126, examinó el recurso discrecional y mediante *"Resolución,"* emitida el 27 de enero de 2026, desestimó el recurso presentado por falta de jurisdicción. El Panel Hermano razonó, que la segunda reconsideración instada por las peticionarias no cumplió con los requisitos necesarios para interrumpir el término para recurrir en alzada. Cabe agregar, que previo a la notificación de la referida *"Resolución,"* el 24 de julio de 2025, el Tribunal de Apelaciones declaró *Ha Lugar* una *"Moción en Auxilio de Jurisdicción."* En consecuencia, paralizó los procedimientos ante el Tribunal de Primera Instancia.

para el otorgamiento de la escritura de compraventa. Así pues, solicitó al foro primario que autorizara la realización del aludido negocio jurídico.

En atención de ello, el 16 de marzo de 2026, el foro primario notificó la *"Resolución Interlocutoria y Orden"* que hoy nos ocupa. Mediante esta, autorizó que se enajenara el bien inmueble objeto de litigio a través del otorgamiento de una escritura de compraventa. Cónsono con lo anterior, ordenó que el Alguacil General compareciera a suscribir la referida escritura en representación de los herederos de Daniel Luciano Arroyo y de Edie Peña Barbosa. Además, determinó, que una vez pagados los sellos del otorgamiento de la Escritura, los honorarios del notario y la deuda del CRIM, el recurrido debe consignar en el Tribunal la cantidad sobrante del precio de venta. A su vez, autorizó la remoción de los bienes muebles que se encuentran dentro de la propiedad objeto de enajenación y ordenó que se informe el lugar en donde estos serán almacenados.

En desacuerdo, oportunamente el 20 de marzo de 2026, las peticionarias presentaron *"Moción Urgente de Reconsideración por Falta de Jurisdicción y otros Asuntos."* A través de esta, expusieron los siguientes argumentos: 1) que el foro primario dictó la *"Resolución Interlocutoria y Orden"* en incumplimiento con el término de veinte (20) días adicionales para que ellas pudieran anunciar una nueva representación legal; 2) que el contrato de opción de compra tiene el defecto de que solo comparece el recurrido y no el resto de los coherederos; 3) que el tribunal de instancia se encuentra impedido de emitir determinación alguna al no haberse notificado por el foro apelativo el mandato del caso TA2025CE00126; y 4) que no se ha cumplido con la expedición del Relevo de Gravamen que debe ser emitido por el Departamento de Hacienda.

Acto seguido, el 24 de marzo de 2026, las peticionarias presentaron *"Moción Ampliando Reconsideración e Incluyendo otros Criterios a Considerar."* En síntesis, alegaron, que por no existir una Planilla de Caudal Relicto enmendada, el presente caso no es justiciable por falta de madurez. Añadieron, que el tribunal de instancia está impedido de ordenar la venta del

inmueble objeto de litigio, puesto que no ha realizado las operaciones particionales dirigidas a liquidar, dividir y adjudicar el caudal hereditario.

Así las cosas, el 13 de abril de 2026, el foro primario notificó una nueva *"Resolución Interlocutoria,"* mediante la cual declaró *No Ha Lugar* los petitorios de reconsideración. Entre otras cosas, razonó lo siguiente:

> Ante el certiorari presentado los procedimientos no fueron paralizados, este Tribunal tampoco recibió Orden alguna de paralización por parte del Tribunal Apelativo. De igual forma, el Tribunal Apelativo resolvió precisamente que no poseía jurisdicción en este caso. Así las cosas, las Resoluciones y Ordenes emitidas continuaron en pleno vigor hasta el día de hoy.

Aun en desacuerdo, el 29 de abril de 2026, las peticionarias presentaron un recurso de *certiorari* ante este Tribunal. A través de este esbozaron los siguientes señalamientos de error:

> Erró el TPI al determinar que poseía Jurisdicción en el presente caso para emitir órdenes aun no habiendo recibido el mandato del Tribunal de Apelaciones en el caso TA2025CE00126. Hiendo[sic] en contra de las normas establecidas por la jurisprudencia en los siguientes casos:
>
> (1) Mun Rincón v. Velázquez Muñiz y otros, 192 DPR 989, 1003-1004 (2015)
> (2) Colón y Otros v. Frito Lays, 186 DPR 135 (2012)
> (3) Vaillant v. Santander, 147 DPR 338 (1998).
>
> Erró el TPI al emitir órdenes en cuanto a la venta de una propiedad de la Sucesión sin haberse realizado las operaciones particionales y sin tener los herederson[sic] un derecho contreto [sic] y determinado sobre parte alguna de la herencia y habiendo una oposición a dicha venta por las aquí peticionarias. Hiendo en contra de las normas establecidas en los siguientes casos:
>
> (1) Collazo v. Registrador, 172 DPR 776, 784 (2007)
> (2) Kogan v. Registrador, 125 DPR 636, 651, 652 (1990).
>
> Erró el TPI al determinar que procedía la venta de una propiedad de la Sucesión, sin haberse enme[n]dado la Planilla de Caudal Relicto para que se emitiera un nuevo Relevo de Gravamen, existiendo deudas en el CRIM y faltando bienes muebles, enmienda que el TPI había ordenado que debían realizarse. Hiendo en contra de la sec. 2054.05 de la Ley 1-2011, 13 LPRA §61165.

El 4 de mayo de 2026, este Tribunal emitió y notificó una *"Resolución,"* por medio de la cual se le concedió al recurrido un término de veinte (20) días, contados a partir de la notificación, para mostrar causa por la cual no debamos expedir el auto y revocar la resolución recurrida.

Ante ello, el 27 de mayo de 2026, el recurrido presentó *"Escrito en Cumplimiento de Orden de Mostrar Causa y Oposición a la Expedición del Auto de Certiorari."*

Con el beneficio de la comparecencia de las partes, procedemos a esbozar el marco legal aplicable a la presente controversia.

**II.**

**A.    Recurso de Certiorari:**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. *Alio v. Santiago Chardón y otros*, 2026 TSPR 113; *Rivera et al v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); Art. 670 del Código de Enjuiciamiento Civil de 1933, conocido como Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva del *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Íd*. Ahora bien, el ejercicio de esta discreción no es absoluto. Por ello, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece una serie de instancias en las que los foros apelativos pueden ejercer su facultad revisora:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 62-63, 215 DPR ___ (2025), delimita los criterios para la expedición de un auto de *certiorari*. Así pues, estas consideraciones "orientan la función del tribunal apelativo intermedio para ejercer sabiamente su facultad discrecional". *Rivera et al v. Arcos Dorados et al*, supra. La aludida regla permite que el análisis del foro apelativo intermedio no se efectúe en el vacío ni se aparte de otros parámetros al momento de considerar los asuntos planteados. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023); *Rivera et al v. Arcos*

*Dorados et al*, supra; *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 848 (2023); *800 Ponce de León v. American International*, 205 DPR 163, 176 (2020). De conformidad con lo anterior, la Regla 40, *supra*, dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los foros revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto." *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Esta norma permite que el foro primario actúe conforme a su discreción judicial, que es la facultad que tiene "para resolver de una forma u otra, o de escoger entre varios cursos de acción". Id. pág. 735; *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 132 (2019). El ejercicio esta discreción "está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.; *Pueblo v. Hernández Villanueva*, 179 DPR 872, 890 (2010). Así pues, "la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd; Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). No obstante, un tribunal incurre en abuso de discreción cuando ignora sin fundamento un hecho material, concede demasiado peso a un hecho inmaterial, y fundamenta su determinación en ese hecho irrelevante, o cuando a pesar de examinar todos los hechos del

caso hace un análisis liviano y la determinación resulta irrazonable. *íd*. pág. 736. En esos casos, los foros apelativos ostentamos la facultad discrecional para expedir el recurso de *certiorari* y ejercer nuestra función revisora.

**B.     La Sucesión Hereditaria y la liquidación, división y adjudicación de la Comunidad de Herederos:[4]**

La "[s]ucesión es la transmisión de los derechos y obligaciones del difunto a sus herederos." 31 LPRA sec. 2081. Existe la sucesión testamentaria la cual surge de la voluntad del causante manifestada en testamento y la sucesión legitimaria que es aquella que nace por disposición de ley en ausencia de testamento. 31 LPRA sec. 2086. Asimismo, puede también ocurrir la sucesión mixta que opera en parte por voluntad testamentaria y en otra parte por disposición de ley. *Id.* En el testamento el testador puede disponer de sus bienes a título de herencia o de legado. 31 LPRA sec. 2122. No obstante, existe una porción de los bienes hereditarios que necesariamente debe destinarse a los herederos forzosos: descendientes, ascendientes y cónyuge supérstite, según el orden de prelación y las restricciones aplicables. Véase, 31 LPRA sec. 2361-2362; *Vicioso Tueros de Suárez v. Suárez Noya y otros*, 2026 TSPR 8. En la sucesión testamentaria, el testador puede también destinar una parte de sus bienes a la porción de mejora. Véase, 31 LPRA sec. 2391.

En la sucesión intestada la herencia se dividirá de conformidad a la proximidad de parentesco a través de las líneas descendentes, colaterales y ascendentes. Véase, 31 LPRA sec. 2601-2603. En específico, la sucesión corresponderá en primer lugar a los descendientes y en ausencia de ellos tendrán derecho a heredar los ascendientes. Véase, 31 LPRA sec. 2641 y sec. 2651. Cabe señalar, que en la línea descendente y en la línea colateral de hermanos a sobrinos opera el derecho de representación, que permite

---

[4] En vista de que los causantes de los bienes sucesorios en controversia fallecieron bajo la vigencia del Código Civil de 1930, realizamos referencia a dicho marco legal, a tenor de los artículos 62 y 1816 del Código Civil de 2020, Ley Núm. 55-2020, según enmendada, 31 LPRA sec. 5441 y sec. 11721. En lo atinente, el Artículo 62 lee de la siguiente manera: "La sucesión por causa de muerte se rige por la ley del domicilio del causante en el momento de su fallecimiento." Por su parte, el Artículo 1816 reza en lo pertinente: "Los derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor este Código, se rigen por la legislación anterior."

que dichos descendientes y sobrinos hereden por estirpe en lugar del llamado a suceder; en los escenarios en que el primero premuera al causante o no pueda heredar en las circunstancias contempladas por ley. Véase, 31 LPRA sec. 2621-2626.

En lo concerniente a la comunidad de herederos, es preciso mencionar, que esta surge en los escenarios en que fallece una persona a la que le sobreviven más de un heredero. *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 268 (2021). Dicha comunidad se caracteriza por ser universal, ya que recae sobre la unidad patrimonial de la herencia; forzosa, por surgir con independencia absoluta de la voluntad de los titulares; y transitoria, pues se constituye por la ley para disolverse por la partición. Véase *Kogan v. Registrador*, 125 DPR 636, 651 (1990), (citando a José Castán Tobeñas, *Derecho Civil español, común y floral* 289-99, T. VI, Vol. I (8va ed. 1978)). La cotitularidad sobre un patrimonio relicto conocida como "comunidad hereditaria" termina con la partición de la herencia. *Sucn. Sepúlveda Barreto v. Registrador*, 125 DPR 401, 405 (1990), citando a E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. 1, pág. 294.

Según el Art. 1021 de nuestro Código Civil, "[l]a partición legalmente hecha confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados." 31 LPRA sec. 2901. "Todo coheredero que tenga la libre administración y disposición de sus bienes, podrá pedir en cualquier tiempo la partición de la herencia." 31 LPRA sec. 2872. La acción de partición, por lo tanto, representa el momento de la liquidación de la universalidad patrimonial y la adjudicación de bienes cuando se le confiere a cada heredero la propiedad exclusiva de los bienes hereditarios que le corresponden y, por lo tanto, deja de existir la comunidad hereditaria. Véase, *Cintrón Vélez v. Cintrón De Jesus*, 120 DPR 39, 39 (1987).

La partición incluye el inventario, avalúo, liquidación, división y adjudicación. E. González Tejera, *Derecho de Sucesiones*, San Juan, Puerto Rico, Editorial de la Universidad de Puerto Rico, 2001, Tomo I, págs. 481-

499. En el proceso particional supone el inventario "una relación de bienes y deudas convenientemente separados." *Méndez v. Ruiz Rivera*, 124 DPR 579, 586 (1989). Tal separación de bienes corresponde a lo siguiente:

> a) Todos aquellos bienes, derechos y acciones que tenía en su poder el causante y que conste fehacientemente que corresponden a un tercero los que quedan lógicamente excluidos del inventario, debiendo proceder aquellos que practican la partición a su devolución, según derecho.
>
> b) Aquellos bienes respecto de los cuales el causante sólo tenía un derecho de usufructo toda vez que, dado el carácter personalísimo de este derecho, deben asimismo ser restituidos.
>
> c) Aquellos bienes poseídos por el causante conforme a un título, según el cual han de pasar a su muerte a otras personas determinadas, sean o no herederos. *Id.*

[…]

Por su parte, la etapa del avalúo "consiste en la fijación del valor de cada uno de los bienes inventariados, al efecto de poder determinar numéricamente su importancia." *Silva v. Srio. de Hacienda,* 86 DPR 332, 342 (1962). En lo que respecta a la etapa de la liquidación, durante esta, se deben determinar, entre otras cosas, los bienes gananciales, si los hubiere, los bienes privativos del causante, el importe de las bajas especiales, las legítimas de los herederos forzosos, la del cónyuge supérstite, las mejoras y los legados. *Id.* Acto seguido, en la operación de la división se habrá de señalar la cuota numérica que corresponda a cada heredero o legatario. *Id.*

**C.    Jurisdicción:**

La jurisdicción es el poder o la autoridad de un tribunal para considerar y decidir casos o controversias. *Friger Salgueiro v. Mech-Tech College, LLC y otros,* 2026 TSPR 30; *Greene y otros v. Biase y otros,* 2025 TSPR 83 (2025); *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024). "Es por eso que la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia." *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 386 (2020); *Peerless Oil v. Hermanos Pérez*, 186 DPR 239, 249 (2012). A tales efectos, si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *JJJ Adventure, LLC v. Consejo*

*de Titulares del Condominio Adaligia; Aseguradora X,* 2025 TSPR 123; *Mun.*
*de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014).

**D.      Auxilio de Jurisdicción:**

Una solicitud en auxilio de jurisdicción "es un remedio provisional que
está predicado en la facultad inherente que tiene todo tribunal para
estructurar remedios que protejan su jurisdicción y eviten un fracaso de la
justicia." *Pantoja Oquendo v. Mun. de San Juan*, 182 DPR 101, 108-109
(2011). Se trata también de un remedio en equidad cuya procedencia recae
en la sana discreción de los tribunales. *García López y otros v. E.L.A.*, 185
DPR 371, 377 (2012). Las ordenes provisionales que se pueden emitir en
virtud de un auxilio de jurisdicción tienen el propósito de paralizar los efectos
de una decisión recurrida o de evitar alguna consecuencia adversa que
pueda causar daño sustancial a una de las partes mientras el tribunal
resuelve los méritos de un recurso presentado. *San Gerónimo Caribe Project*
*v. A.R.Pe.*, 174 DPR 640, 654 (2008).

Las solicitudes de auxilio de jurisdicción que se presenten ante el
Tribunal de Apelaciones deberán cumplir con el Reglamento del foro
apelativo. En específico, la parte peticionaria deberá observar lo establecido
en la Regla 79 del Reglamento del Tribunal de Apelaciones, según
enmendada, *In re Aprob. Enmdas. Reglamento* TA, 2025 TSPR 42, pág.
109-110, 215 DPR ___ (2025). Dicha regla lee en lo atinente como sigue:

> (A) **Para hacer efectiva su jurisdicción** en cualquier asunto
> pendiente ante sí, el Tribunal de Apelaciones podrá expedir
> cualquier orden provisional, la cual será obligatoria para las partes
> en la acción, sus oficiales, agentes, empleados, empleadas,
> abogados y abogadas, y para aquellas personas que actúen de
> acuerdo o participen activamente con ellas y que reciban aviso de la
> orden mediante cualquier forma de notificación. Dichas órdenes se
> regirán por las disposiciones pertinentes del Código de
> Enjuiciamiento Civil, las Reglas de Procedimiento Civil, las Reglas
> de Procedimiento Criminal y, en lo que no fuere incompatible con
> aquellas, se regirán también por estas reglas. (Énfasis Suplido).

[…]

**E.      Mandato:**

Tal y como lo ha expresado nuestro Tribunal Supremo, el mandato es
una figura enmarcada dentro de los procesos apelativos judiciales, la cual
se ha definido como el medio que posee un tribunal en alzada de

comunicarle a un tribunal inferior qué determinación ha tomado sobre la sentencia objeto de revisión y ordenarle actuar en conformidad con la misma. Véase, *Colón y otros v. Frito Lays*, 186 DPR 135, 151 (2012).

Mediante el mandato, un foro apelativo le comunica al foro apelado su decisión, le imparte instrucciones y le devuelve el expediente original del caso*.* R. Hernández Colón, Práctica Jurídica de Puerto Rico; Derecho Procesal Civil, 5ta ed., San Juan, Pub. Lexis Nexis, 2010, Sec. 5553, págs. 499. El mismo "representa el final de los procesos en revisión, la remoción del caso de la jurisdicción del tribunal apelativo y su devolución al foro de origen para la continuación de los procedimientos." *Vaillant v. Santander,* 147 DPR 338, 351 (1998).

En armonía con lo anterior, nuestro Tribunal Supremo ha expresado que el mandato cobra especial relevancia en lo concerniente a los efectos de índole jurisdiccional que pueda tener su remisión al foro de origen. *Colón y otros v. Frito Lays*, supra, pág. 153. Una vez el tribunal en alzada emite su determinación, y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido. *Id.* Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto. *Id.*

**III.**

El recurso de *certiorari* de las peticionarias contiene tres (3) señalamientos de error. Primero, conviene necesariamente atender el planteamiento relacionado a la doctrina del mandato. Por un lado, las peticionarias sostienen que incidió el foro primario al continuar los trámites procesales del presente caso, a pesar de que no había recibido el mandato del foro apelativo con el dictamen del caso TA2025CE00126. Ante ello, aducen que el tribunal de instancia no tenía autoridad para emitir determinación alguna antes de la notificación del referido mandato. Por el otro extremo, el recurrido alega que los procesos ante el tribunal de instancia nunca fueron suspendidos, toda vez que el Tribunal de Apelaciones

desestimó y se declaró sin jurisdicción para resolver en sus méritos el caso TA2025CE00126. Agrega, que la orden de paralización, entonces emitida, no fue propiamente notificada.

Tras examinar la normativa aplicable, resolvemos que el primer señalamiento de error no fue cometido. Nos explicamos.

Durante el trámite procesal de este caso, el 10 de julio de 2025, las peticionarias presentaron el recurso de *certiorari:* TA2025CE00126 ante el Tribunal de Apelaciones. La sola presentación de este auto discrecional no paralizó los procedimientos que se tramitaban ante el Tribunal de Primera Instancia. Ello, puesto que, en los casos civiles la presentación de una solicitud de *certiorari* no suspende los procedimientos ante el Tribunal de Primera Instancia. Véase, la Regla 35 (A)(1) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 58, 215 DPR ___ (2025).

Ahora bien, el Tribunal de Apelaciones tiene la facultad de expedir órdenes a solicitud de parte o a iniciativa propia a los fines de paralizar los procedimientos que se dilucidan ante el foro primario. Eso ocurrió en el caso: TA2025CE00126, dado que las peticionarias presentaron ante el foro apelativo una *"Moción en Auxilio de Jurisdicción."* En dicha ocasión, este Tribunal autorizó la solicitud de paralización. Posteriormente, al momento de disponer del referido recurso, esta Curia concluyó que el auto de *certiorari* radicado adolecía de presentación tardía. Por consiguiente, este Foro determinó su falta de jurisdicción y desestimó el recurso TA2025CE00126.

Según la normativa expuesta, una solicitud de auxilio de jurisdicción es un remedio provisional que el Tribunal de Apelaciones puede conceder para proteger su jurisdicción. A su vez, el concepto de jurisdicción hace referencia a aquella autoridad que tienen los foros judiciales para resolver controversias. En los casos en que no existe jurisdicción, los Tribunales no pueden asumir autoridad sobre los recursos y resolver sus méritos. La paralización concedida dentro del recurso TA2025CE00126 no tuvo el efecto de que el Tribunal de Apelaciones retuviera jurisdicción sobre el caso. La

razón de ello estriba, en que no había ninguna autoridad que proteger dado que el Tribunal de Apelaciones no tenía jurisdicción para examinar los méritos del recurso TA2025CE00126, por haberse presentado en exceso del término dispuesto para su radicación. En vista de la aludida falta de jurisdicción, la orden de paralización emitida nunca tuvo eficacia jurídica. A la luz de lo anterior, las determinaciones notificadas por el foro primario con antelación a la notificación del mandato del recurso: TA2025CE00126, son legítimas y emitidas con autoridad decisional.

Superado el análisis jurisdiccional, ahora corresponde entrar en los méritos del recurso presentado y resolver si goza de legitimidad la venta del bien inmueble, sito en Mayagüez, el cual pertenecía a los causantes Daniel Luciano Arroyo y Edie Peña Barbosa. Las peticionarias sostienen, que la referida compraventa es improcedente dado que el foro primario no realizó con anterioridad una operación particional, a través de la cual se efectuara el proceso de liquidación y división de la comunidad hereditaria. Sobre esto, razonan que los herederos de una comunidad de bienes no pueden vender o gravar un bien específico que pertenezca a la herencia, antes de la partición. Por su parte, el recurrido arguye, que solicitó la venta del inmueble para preservar su valor y satisfacer la deuda contributiva del CRIM para el beneficio de todos los herederos.

Ciertamente, es norma ampliamente conocida, que una vez que fallece una persona, sus bienes, derechos y obligaciones pasan a formar parte de una masa hereditaria, de la cual únicamente cada heredero es partícipe de una cuota abstracta que recae sobre todo el haber hereditario. Por lo tanto, antes de concluir el proceso particional, ningún sucesor es titular de bienes particulares ni de cuotas específicas que recaigan sobre los bienes hereditarios. Véase, *Kogan v. Registrador*, pág. 652. De manera que, para que un caudal relicto sea finalmente individualizado y adjudicado a cada uno de los herederos, se debe realizar previamente un procedimiento de partición de herencia.

Nuestro Ordenamiento Jurídico exige que el proceso particional trascurra mediante una serie de pasos ordenados dirigidos a liquidar, dividir y adjudicar la herencia. En primer lugar, el caudal relicto se debe liquidar antes de repartirlo entre los legítimos sucesores. Para el buen desarrollo del proceso de liquidación se hace meritorio gestionar un inventario, avaluó y tasación de todo el caudal hereditario. Asimismo, jurisprudencialmente se ha reconocido que en la etapa de liquidación se deben determinar, entre otros, los bienes privativos, los bienes gananciales, las legítimas, el importe de bajas especiales, los legados, las mejoras y la cuota viudal usufructuaria, según apliquen.

Ahora bien, como parte de las fases preliminares del proceso particional hay que tomar en consideración las cargas y obligaciones que forman parte del caudal hereditario. La razón de ello estriba, en que la herencia objeto de partición no solo se compone de bienes y derechos, sino también se integra de las obligaciones y relaciones jurídicas pasivas que eran parte del patrimonio de la persona causante al momento de su muerte. Véase, *Island Holdings v. Sucn. Hernández Ramírez,* 201 DPR 1026, 1036 (2019). Así pues, estas cargas y obligaciones se transmiten a sus herederos y éstos tienen el deber de responder por los pasivos del caudal relicto. Cónsono con ello, es normativa altamente asentada que "preferente es el derecho de los acreedores al de los herederos, y primero es pagar que heredar." *Ruiz v. Ruiz*, 74 DPR 347, 351 (1953).

Recientemente, nuestro más Alto Foro tuvo ante su consideración el caso: *Torres Cubano v. Sucesión de Miriam Magdalena Domenech Rosado*, 2026 TSPR 64. En el precitado caso, el Tribunal Supremo tuvo la oportunidad de "precisar cómo se deben distribuir las cargas contributivas de las sucesiones antes de la liquidación del caudal." En lo aquí pertinente, el Alto Foro reiteró el principio de que las deudas se deben pagar antes de poder heredar. Sobre ello, razonó, que los caudales deben estar libres de todo tipo de deudas antes de poder ser distribuidos. Asimismo, determinó, que "para poder hacer un cómputo apropiado del valor total del caudal, se

deben sustraer todo tipo de deudas, incluso las contributivas, y se debe determinar el valor justo del mercado de los activos que componen el caudal al momento de la conmutación."

En armonía con lo anterior, el Tribunal Supremo estableció los siguientes dos aspectos fundamentales: 1) "[L]os tribunales deben asegurarse de que las deudas contributivas fueron satisfechas antes de distribuir el caudal para evitar cualquier evasión contributiva;" y (2) que "hay que saldar toda deuda, especialmente las contributivas, **antes de liquidar el caudal de una sucesión**." (Énfasis suplido).

En el caso que hoy ocupa a este Foro Intermedio, se encuentran en controversia los caudales hereditarios de los causantes Daniel Luciano Arroyo y Edie Peña Barbosa. Tanto el recurrido como las peticionarias presentaron inventarios sobre los bienes sucesorios que entienden que forman parte de los caudales relictos en cuestión. Surge del expediente, que, el 28 de julio de 2024, el recurrido presentó "*Escrito en Cumplimiento de Orden del 27 de junio de 2024,*" con una sección intitulada *"Inventario."* Por su parte, el 17 de septiembre de 2024, las peticionarias presentaron el documento intitulado *"Inventario."* A su vez, el 11 de abril de 2025, se otorgó un *"Acta Notarial"* que contempla un inventario específico y detallado sobre los bienes muebles que formaban parte de la propiedad inmueble en disputa.[5]

En cuanto a los pasivos de los caudales sucesorios, surge del expediente que existía sobre la propiedad inmueble una deuda a favor del CRIM por la cantidad inicial de $11,581.68. Durante el desarrollo del litigio esta deuda fue incrementando hasta la cantidad final de $18,249.25.[6] Tras la venta del inmueble a unas terceras personas, según autorizado por el tribunal de instancia, el 21 de marzo de 2026, el recurrido consignó en el Tribunal la cantidad de $189,008.30. La referida parte aseveró, que esta última cuantía es la cantidad sobrante del precio de compraventa luego de

---

[5] Véase, Entrada Núm. 108 de SUMAC del TPI, *"Apéndice D."*

[6] Véase, las Entradas: 42; 71; 96; 124; 131; y 146 de SUMAC del TPI.

descontar la deuda del CRIM y los gastos de otorgamiento del negocio jurídico.

Ante las circunstancias reseñadas y la normativa vigente, es procedente determinar que el segundo señalamiento de error no fue cometido. Según anteriormente resumido, las peticionarias alegan que carece de legitimidad la compraventa efectuada puesto que no se ha realizado el proceso de liquidación ni de división de los caudales hereditarios. Asimismo, argumentan, que los herederos están impedidos de disponer libre y unilateralmente de los bienes de una herencia. De entrada, cabe señalar que no estamos ante un escenario en que uno de los coherederos haya logrado extrajudicialmente y de forma unilateral vender el inmueble en disputa. Por el contrario, la enajenación en cuestión se efectuó en virtud de una autorización judicial. De otra parte, de conformidad a lo esbozado, es norma establecida y reiterada que primero se realiza el pago de las acreencias y posteriormente se hereda. Cónsono con ello, reiteramos, que el precitado caso de *Torres Cubano v. Sucesión de Miriam Magdalena Doménech Rosado*, supra, aclaró y puntualizó que primero se debe saldar toda deuda, en especial las contributivas, antes de liquidar el caudal sucesorio.

Respecto a la deuda ante nuestra consideración, el CRIM se caracteriza por ser una entidad encargada de brindar servicios fiscales a los municipios. Entre otras cosas, el CRIM tiene la facultad de realizar todas las gestiones para cobrar las cuentas de las contribuciones sobre la propiedad. El Código Municipal contempla que los municipales pueden imponer contribuciones para cada año económico de hasta un cuatro por ciento (4%) anual sobre el valor tasado de toda propiedad mueble y de hasta un seis por ciento (6%) anual sobre el valor tasado de toda propiedad inmueble. Es meritorio mencionar, que las contribuciones impuestas a favor del CRIM constituirán una carga real relativa a una hipoteca legal tácita. Véase, el Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, 21 LPRA secs. 7951, 7952, 7982 y 8014.

De manera que, la deuda objeto de litigio se debe considerar dentro del rango de las cargas contributivas a las que el alude el caso *Torres Cubano v. Sucesión de Miriam Magdalena Doménech Rosado*, supra. Por lo tanto, su saldo merece especial atención. En vista de las anteriores consideraciones, no incidió el foro primario al autorizar la compraventa del inmueble objeto de disputa, puesto que, dentro del orden de sucesos del proceso particional, primero se deben satisfacer las deudas de los caudales y posteriormente liquidar las herencias.

La normativa vigente esbozada y aplicada al presente caso es suficiente para disponer de la controversia ante nos. Sin embargo, no podemos pasar por alto las circunstancias que rodean la carga económica en cuestión. Según reseñado, al comenzar el litigio la deuda a favor del CRIM era por la cantidad de $11,581.68 y en un periodo de casi dos (2) años incrementó a la cuantía de $18,249.25. De manera que, si se extendía el tiempo de satisfacer dicha acreencia los activos del caudal hereditario podrían haber sufrido notables reducciones y el inmueble quedar a merced de una posible ejecución de hipoteca legal a favor del CRIM. Por consiguiente, estas circunstancias particulares también legitiman la acción de compraventa, por la misma representar una medida protectora para los caudales relictos en controversia.

Por otro lado, surge del expediente que tras satisfacer la deuda del CRIM, el dinero sobrante de la compraventa fue consignado en el Tribunal. Siendo así, corresponde ahora liquidar los caudales hereditarios en atención a las sucesiones testada e intestada que están en litigio. Esto incluye, entre otras consideraciones, auscultar la existencia de otras responsabilidades económicas que se deban satisfacer; valorar los bienes del caudal libre de cargas; determinar los bienes privativos y gananciales; examinar los derechos de transmisión y representación, las legítimas, mejoras, legados y libres disposiciones.

De otra parte, las peticionarias señalan que el tribunal de instancia no tenía jurisdicción para actuar hasta tanto se enmiende la Planilla del Caudal

Relicto y se reciban los Relevos de Gravamen del Departamento de Hacienda. Al respecto, el recurrido asevera que el Departamento de Hacienda emitió los correspondientes Relevos. Al examinar el expediente ante nos, surge que, el 6 de agosto de 2025, el recurrido notificó los Relevos de Hacienda.[7] Por lo tanto, el tercer señalamiento de error tampoco fue cometido.

Así pues, al amparo de la Regla 40 del Tribunal de Apelaciones, *supra, expedimos* el auto de *certiorari* y *confirmamos* el dictamen objeto de revisión.

**IV.**

Por los fundamentos que anteceden, *confirmamos* la determinación recurrida.

**Notifíquese.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Véase, Entrada Núm. 120 de SUMAC del TPI, Apéndice 1 y 2.